UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, LOCAL UNION NO. 397,<br><br>　　Plaintiff,<br><br>　　　v.<br><br>AMERICAN WATER WORKS COMPANY INC., and ILLINOIS AMERICAN WATER COMPANY GRANITE CITY DISTRICT,<br><br>　　Defendants. | Case No. 12-cv-600-JPG-DGW |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the parties' cross motions for summary judgment (Docs. 30 & 31), to which the respective parties have responded (Docs. 35 & 34). Plaintiff Laborers' International Union of North America, Local Union No. 397 ("Local 397") has also replied (Doc. 37) to the defendants' response to its summary judgment motion.

Local 397 brought this against defendants American Water Works Company, Inc. ("American Water") and its subsidiary Illinois American Water Company ("IAWC") pursuant to § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, for breach of a collective bargaining agreement ("CBA"). It believes the defendants have breached the applicable CBA by refusing to arbitrate a grievance filed by a union member. The defendants contend they did not agree to arbitrate disputes of the sort contained in the grievance. The parties agree that this case can be resolved by cross summary judgment motions, although the defendants contend in their briefing that factual issues exist. After reviewing the evidence on file, the Court believes any such factual disputes are not material to the outcome of this case and that, indeed, this case can be resolved on summary judgment.

I.  **Summary Judgment Standard**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). Because there are no issues of material fact, this case turns on which side is entitled to judgment as a matter of law, that is, whether the parties agreed to arbitrate the matter presented in the grievance.

II.  **Facts**

The evidence reveals the following undisputed facts.

A.  The 2011-16 CBA

Local 397 represents a number of employees of IAWC in its Granite City District. Pursuant to that representation, Local 397 and IAWC negotiated and executed a CBA covering the period from April 1, 2011, through March 31, 2016, ("2011-16 CBA"). The 2011-16 CBA contains the following arbitration clause:

> Section 3.  Differences which may arise out of the application or interpretation of the provisions of this agreement shall be termed grievances. . . . Grievances of employees . . . shall normally be adjusted by direct contact between the employee and his/her immediate superior, either personally or with the employee's Union representative.
>
> Where differences cannot be adjusted in the normal way, they shall be reduced to writing and referred by the employee and his/her representative to his immediate superior and the Designated Company Representative. . . .  If still not resolved, the matter shall then be referred to a joint conference committee between the Company and the Union in an attempt to resolve said grievance.
>
> If the joint conference committee does not settle the grievance, it shall be subject to arbitration. . . .
>
> The impartial arbitrator shall promptly hear the dispute and make a decision which shall be reduced to writing and shall be final and binding upon the Company, the Union and all employees represented by the Union. . . .

2011-16 CBA at 3.

The 2011-16 CBA also contains the following provision relating to pension benefits:

Section 21.   INSURANCE – PENSIONS – SAVINGS PLANS
Bargaining unit employees may be eligible to participate in the following benefit plans sponsored by American Water Works Company, Inc.:

- Group Insurance Plan
- Savings Plan – 401(k) (contribution levels based on date of hire)
- Defined Contribution Plan (based on date of hire)
- Defined Benefit Pension Plan (based on date of hire)

Eligibility and participation in the Group Insurance Plan, Savings Plan – 401(k) (contribution levels based on date of hire), Defined Contribution Plan (based on date of hire) and the Defined Benefit Pension Plan (based on date of hire) are governed by this Agreement and the relevant Plan documents.   Benefit coverage is subject to national benefit negotiations (National Benefits) and will be consistent with National Benefits and related Plan documents.   Any additions, deletions or modifications to benefits covered under National Benefits during the term of this Agreement will be incorporated herein.   Specific details of the benefits are contained in the Summary Plan Description (SPD) for each Plan.   If any question arises concerning the nature and extent of benefits, the actual Plan documents will govern.

National Benefits are not subject to local negotiations as long as they are occurring at the national level or unless mutually agreed to by the parties.

2011-16 CBA at 12-13.   The Defined Benefit Pension Plan ("Pension Plan") referred to in Section 21 is described in more detail in the next section of this order.

Section 21 as it existed in the 2011-16 CBA was a change from the corresponding provisions of prior CBAs.   Prior CBAs stated that the retirement plan existing at the time the CBA went into effect would "continue in full force and effect" and that extensions or changes to the plan negotiated between the Laborer's International Union of North America ("LIUNA") and American Water at the national level would be incorporated into the plan.   For the 2011-16 CBA, Local 397 and IAWC negotiated the new, replacement language that became the current Section 21.   They did not, however, negotiate any terms contained in the plans to which Section 21 refers, and, although IAWC at one point proposed it, they did not agree to include any specific terms of

3

the Pension Plan in the 2011-16 CBA.

    B.    <u>Retirement Benefits</u>

Rather than negotiating the terms of the plans to which Section 21 refers at the local level, that task was left to the respective sides' actors at the national level: LIUNA and American Water. These plan benefits were referred to as "National Benefits." Most relevant to this case is the Pension Plan.

Until 2005, the National Benefits negotiated by LIUNA and American Water included a traditional defined benefit pension plan – the Pension Plan – under which retirees would receive a retirement benefit based on a formula that took into account their salary and years of service. In the summer of 2005, LIUNA and American Water began negotiating changes to the Pension Plan that involved transitioning some employees' retirement benefits to a defined contribution plan, where retirement benefits would be based on contributions to the plan and the performance of the investment vehicles purchased with those contributions, but no certain level of benefits would be guaranteed. LIUNA and American Water ultimately agreed to modify the National Benefits such that (1) employees hired before January 1, 2006, would remain eligible for participation in the Pension Plan, (2) employees hired after January 1, 2006, would not be eligible for participation in the Pension Plan, and (3) employees hired between January 1, 2001, and January 1, 2006, would be eligible for participation in the Pension Plan until December 31, 2005, at which time their accrued benefits under the Pension Plan would be frozen and subsequent retirement benefits would accrue only under the defined contribution plan. These changes to the Pension Plan were reflected in the 2005-2010 National Benefits Agreement and in the Pension Plan documents themselves, including the Pension Plan For Employees of American Water Works Company, Inc. And Its Designated Subsidiaries (As Amended And Restated Effective January 1, 2007) and the Summary Plan Description of the Pension Plan For Employees Of American Water Works

Company Inc. And Its Designated Subsidiaries (As in Effect January 1, 2006).

The amended and restated Pension Plan document effective January 1, 2007, contains the following provisions:

> PURPOSE
> 1.     . . . . The provisions of this Plan shall govern with respect to retirement income over any bargaining unit agreement, but shall not supersede, modify, change or substitute any terms and provisions not relating to retirement income of participating Employees that appears in such agreements.
>
> * * *
>
> ADMINISTRATION
> 3.     The Plan shall be administered by the Committee as more fully provided for in Paragraphs 36 through 39.
>
> * * *
>
> RETIREMENT/BENEFITS COMMITTEE
> 37.     The Board of Directors shall appoint a Retirement/Benefits Committee to administer the Plan. . . .
>
> 38.     . . . . Except as may otherwise be provided by the Plan, the Committee shall have all powers necessary to accomplish the purposes of the Plan including, but not by way of limitation, the following:
>
>> (a) To interpret the provisions of the Plan and to decide any dispute that may arise regarding the rights of Participants thereunder.   Any such determinations shall apply uniformly to all persons similarly situated and shall be binding and conclusive upon all interested persons.
>>
>> (b) To determine all questions affecting the eligibility of any Employee to participate in the Plan. . . .
>>
>> (c) To compute the amount of benefits payable hereunder to any Participant.

Pension Plan For Employees of American Water Works Company, Inc. And Its Designated Subsidiaries (As Amended And Restated Effective January 1, 2007) at 1, 10, 31-32.   The amended and restated Pension Plan document effective January 1, 2007, also contains a procedure to be administered by the Committee for a Pension Plan participant to claim benefits under the

5

Pension Plan. The procedure begins with an initial claim to be reviewed by the Committee, allows for an appeal to the Committee for review of an adverse benefit determination, and culminates in the right to bring a legal action.[1]  *Id.* at 33.

### C. Darrell Tyler's Grievance

Darrell Tyler had been employed by IAWC from 1984 to 1997, during which time he accumulated a number of years of service under the Pension Plan. He left IAWC's employment for a while but was reemployed in 2004. He was treated by IAWC as a newly hired employee.

After LIUNA and American Water amended and restated the Pension Plan in 2007 based on the National Benefit changes, IAWC treated Tyler as if he were in the third category of employees mentioned in the prior section of this order: employees hired between January 1, 2001, and January 1, 2006, who were eligible for the Pension Plan benefit accrual until December 31, 2005, but not afterward. Thus, as of December 31, 2005, it terminated his benefit accrual under the Pension Plan and froze his vested accrued benefit under the Pension Plan based on his prior years of service. Tyler believed that this was an incorrect determination of his eligibility for continuing Pension Plan benefit accruals and that he is entitled to continue his full participation in and benefit accrual under the Pension Plan.

Tyler complained to Local 397 about IAWC's failure to make contributions to the Pension Plan on his behalf after December 31, 2005. Local 397 filed a grievance on Tyler's behalf on July 25, 2011, claiming IAWC had violated Section 21 of the 2011-16 CBA by failing to make contributions to the Pension Plan on Tyler's behalf. IAWC denied the grievance several months later. IAWC initially agreed to arbitrate the matter and proceeded to cooperate in selecting an arbitrator. However, while working out arbitration scheduling matters, IAWC reviewed the

---

[1] The Court cannot determine all of the details of the claims procedure because not all of the relevant pages of the amended and restated Pension Plan document are in the record.

grievance more carefully and arrived at the conclusion that the subject matter of the grievance – a Pension Plan eligibility decision – was not covered by the 2011-16 CBA arbitration clause. In April 2012, IAWC informed Local 397 it would not submit the matter to arbitration after all. In turn, Local 397 filed this lawsuit alleging IAWC and American Water had breached the arbitration clause of the 2011-16 CBA.

**III.    Analysis**

The key issue in a suit to compel arbitration is always whether the parties have agreed in their CBA to arbitrate the matter in dispute. While it is the Court's job to enforce a party's promise to arbitrate, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). Where there is a broad arbitration clause providing for arbitration of the meaning and application of a CBA, the Court should order arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Id*. at 582-83; *accord AT & T Tech., Inc.*, 475 U.S. 643, 650 (1986) (acknowledging a presumption of arbitrability where arbitration clause is broad). The Supreme Court has stated that, where the arbitration clause is broad and there is no "express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Warrior & Gulf*, 363 U.S. at 584-85. The issue of whether parties have agreed to arbitrate a particular dispute is a question for the Court unless the parties clearly provide otherwise. *Id.* at 582-83; *AT & T*, 475 U.S. at 651. There is no express language in the 2011-16 CBA excluding from arbitration grievances about eligibility for benefit accrual under the Pension Plan, so the Court must determine whether there is forceful evidence clearly showing the parties intended to exclude such claims from arbitration.

In deciding whether "forceful evidence of a purpose to exclude . . . from arbitration" exists, the Court is guided by *Printing Specialties & Paper Products Union Local 680 v. Nabisco Brands, Inc.*, 833 F.2d 102 (7th Cir. 1987). That case also involved a CBA that had a broad arbitration clause covering all disputes regarding wages, hours or working conditions arising under the CBA. *Id.* at 103. The CBA also provided that the employer would continue the company's pension plan "in full force and effect" during the term of the CBA. *Id.* Like the Pension Plan at issue in this case, the pension plan at issue in *Printing Specialties* was not negotiated at the local level but was, instead, the employer's national plan applicable to all of the employer's employees. *Id.* at 105. The pension plan was administered by two committees charged with interpreting, among other things, eligibility, service, vesting and determination of benefits under the pension plan, and contained a comprehensive appeal procedure to resolve pension disputes. *Id.* at 103.

When a dispute arose over whether certain union members were entitled to an early retirement benefit under the pension plan, the pension plan administrator determined the workers were not eligible for the benefit. *Id.* The employees' union then sought to arbitrate the issue under the CBA's arbitration clause. *Id.* The employer refused to arbitrate, prompting the union to sue under § 301 of the LMRA for breach of the arbitration clause. *Id.* The District Court found that the claim was not arbitrable. *Id.* at 103-04.

In affirming the District Court's decision not to compel arbitration, the Court of Appeals looked first to the broad language of the arbitration clause to establish a presumption of arbitrability. *Id.* at 104. It determined, however, that there was a wealth of forceful evidence that the union and the employer did not intend to arbitrate the determination of benefits under the pension plan. *Id.* It relied primarily on the plan's "separate and distinct independence" from the CBA, noting that, although the CBA mentioned the pension plan and required the employer to continue it in full force and effect, it did not incorporate the pension plan's provisions into the

8

CBA.  *Id.* at 105.   The Court further noted the employer refused to negotiate pension plan terms in the CBA negotiations and the pension plan's separate prescription for determining benefits and administering grievances over pension plan issues.   *Id.*

The Court of Appeals further speculated that it might have come to a different decision had the parties bargained over the pension plan terms and made them part of the CBA, *see, e.g., Karl Schmidt Unisia, Inc. v. International Union, United Automobile, Aerospace, & Agricultural Implement Workers of Am.*, UAW Local 2357, (7th Cir. 2010) (CBA itself contained promise of retirement benefit also contained in retirement plan so dispute was subject to arbitration under CBA); *International Ass'n of Machinists & Aerospace Workers, Dist. No. 10 v. Waukesha Engine Div., Dresser Indus., Inc.*, 17 F.3d 196 (7th Cir. 1994) (CBA expressly incorporated medical benefit plan but parties did not intend to arbitrate particular dispute), or had the union challenged whether the employer had done something calling into question whether it was keeping the pension plan "in full force and effect" as promised in the CBA, *see, e.g., Local 232, Allied Indus. Workers of Am., AFL-CIO v. Briggs & Stratton Corp.*, 837 F.2d 782, 787 (7th Cir. 1988) (changes to pension plan called into question employer's obligation under the CBA to "maintain" plan and were thus subject to arbitration).   *Printing Specialties*, 833 F.2d at 105.

The arbitration clause in the 2011-16 CBA does not require IAWC to arbitrate Tyler's eligibility for continuing benefit accrual under the Pension Plan.   The arbitration clause in this case subjects to arbitration "[d]ifferences which may arise out of the application or interpretation of the provision of this agreement."   2011-16 CBA at 3.   While this broad arbitration clause creates a presumption of arbitrability, the presumption is overcome by forceful evidence that Local 397 and IAWC did not intend to arbitrate disputes about eligibility for continuing benefit accrual under the Pension Plan.   This is because the language of the 2011-16 CBA and the Pension Plan as well as the parties' bargaining history show that the Pension Plan is independent of the 2011-16

CBA.

First, although the 2011-16 CBA refers to the Pension Plan, it does not incorporate its terms. On the contrary, the 2011-16 CBA merely acknowledges that certain welfare and pension plans sponsored by IAWC's parent company exist and that bargaining unit employees like Tyler *may* be eligible to participate in them depending on the terms of the 2011-16 CBA and the Pension Plan documents. It acknowledges that the benefit coverage is subject to separate negotiations conducted at the national, not local, level and that any changes made at the national level during the 2011-16 CBA term will be applicable to the plans for which bargaining unit employees may be eligible. While the reference to eligibility being governed in part by the 2011-16 CBA might appear at first blush to suggest the 2011-16 CBA and the Pension Plan are interdependent, a close examination of the agreement shows that the only additional criteria for participation in the Pension Plan the 2011-16 CBA adds are in Section 4, which limits the benefits available to probationary employees, and in Section 22, which provides the effective dates of the 2011-16 CBA. *See* 2011-16 CBA at 4, 14. The 2011-16 CBA does not, however, contain a single promise of any specific Pension Plan term or benefit.

Furthermore, while the language of Section 21 of the CBA has changed throughout the years based on CBA negotiations between Local 397 and IAWC, Pension Plan terms, including the specific criteria for benefit accrual based on date of hire, have always been negotiated by LIUNA and American Water in negotiations separate from CBA negotiations. In fact, far from subjecting Pension Plan benefits to local negotiation, the 2011-16 CBA provides that negotiations about those benefits can occur at the local level *only if negotiations are not conducted at the national level or if both parties agree to negotiate the benefits*. Here, negotiations about the terms of the Pension Plan occurred solely at the national level without any involvement by the parties to the 2011-16 CBA.

10

Finally, the Pension Plan contains its own mechanism for determining eligibility for benefit accrual and its own claims dispute resolution procedure. Neither depend on the 2011-16 CBA. In fact, the documents themselves mutually declare their independence from each other: the 2011-16 CBA states that questions regarding the nature and extent of benefits are governed by the Pension Plan, 2011-16 CBA at 12, and the Pension Plan states that its provisions govern with respect to retirement income over any provision of a CBA, Pension Plan For Employees of American Water Works Company, Inc. And Its Designated Subsidiaries (As Amended And Restated Effective January 1, 2007) at 1. Clearly, both documents contemplate that the Pension Plan administrator will make decisions regarding eligibility for benefit accrual.

Even if the 2011-16 CBA and the Pension Plan were not independent and the Pension Plan was incorporated into the 2011-16 CBA by reference, the aforementioned factors clearly show that Local 397 and IAWC did not contemplate or agree to submit questions of participation in the Pension Plan or eligibility for benefit accrual – at least those questions not relying on the probationary status of an employee or the effective dates of the 2011-16 CBA – to arbitration. The remedy they agreed to for such disputes was contained in the Pension Plan as incorporated into the 2011-16 CBA. *See Waukesha Engine*, 17 F.3d at 198-99.

This is not a case like *Briggs & Stratton* where the dispute is over a promise the employer made in a CBA. Here, Local 397 does not argue, for example, that the plans listed in Section 21 have been made unavailable to its bargaining unit employees otherwise eligible under the plans or that changes have been made to benefits other than those negotiated at the national level. In such cases, it may very well be that the dispute would be subject to arbitration under the 2011-16 CBA. However, those types of disputes are not before the Court. This dispute is an individual benefit accrual eligibility determination made by the Pension Plan administrator based on language solely found in the Pension Plan.

One final note deserved attention. Local 397 argues that the Pension Plan's appeal procedure applies only to claims *for benefits*, but since Tyler has not yet retired, he is not yet claiming benefits. This argument overlooks the fact that the Pension Plan gives its administrator not only the right to decide the benefits to which participants are entitled upon retirement but also to interpret the provisions of the Pension Plan and to determine all questions affecting eligibility for participation in the Pension Plan. These are precisely the type of questions Tyler raises. How to interpret the Pension Plan's appeal process phrased only in terms of claims for benefits is a matter for the administrator to decide in the first instance. In any case, for the reasons discussed earlier, the parties clearly did not intend Tyler's questions to be decided through arbitration under the 2011-16 CBA. To find otherwise would permit a preemptive end-run through arbitration around the Pension Plan's claims administration provisions, which are committed to the Pension Plan administrator. If Tyler is unhappy with the Pension Plan administrator's answers and exhausts any required administrative appeal process, he may be able to sue under § 502(a)(1)(B) of the Employee Retirement Income Security Act, 29 U.S.C. § 1332(a)(1)(B), for a declaration to clarify his right to future benefits under the Pension Plan.

For the foregoing reasons, the Court finds with positive assurance that the arbitration clause in the 2011-16 CBA is not susceptible of an interpretation that covers the dispute over Tyler's eligibility for continuing benefit accrual under the Pension Plan. Local 397 and IAWC simply did not agree in the 2011-16 CBA to arbitrate disputes about continuing eligibility for benefit accrual. Thus, the defendants' failure to arbitrate Tyler's grievance did not breach the 2011-16 CBA.

### IV.   Conclusion

The Court hereby:

- **GRANTS** the defendants' motion for summary judgment (Doc. 30);

- **DENIES** Local 397's motion for summary judgment (Doc. 31); and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: May 30, 2013**

                                              s/J. Phil Gilbert
                                              **J. PHIL GILBERT**
                                              **DISTRICT JUDGE**